**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM RILEY-EL (B-3069)** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 13 C 8656** |
| **v.** | ) | |
| | ) | **Judge Joan B. Gottschall** |
| **SALVADOR GODINEZ, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Pro se prisoner William Riley-El filed suit pursuant to 42 U.S.C. § 1983 alleging

deliberate indifference to his serious medical needs and unconstitutional conditions of

confinement due to a high-soy diet that he claims is injurious to his health.  Riley-El's complaint

(which is eighty-two pages, including exhibits) names thirty-four defendants.  Three groups of

defendants have filed motions to dismiss pursuant to Fed. R. Civ. P.  12(b)(6):  (1) former

Stateville wardens Michael Lemke, Anthony Ramos, Terry McCann, Frank Shaw, and Deirdre

Battaglia and Illinois Department of Corrections ("IDOC") Director Salvador Godinez (Dkt. 25)

(the "Lemke Motion to Dismiss"); (2) Suzann Bailey (Stateville's dietary services

administrator), Marcus Hardy (another former Stateville warden), Thomas Keen (a member of

the Administrative Review Board), Louis Shicker (IDOC's medical director), and former IDOC

directors Michael Randle and Gladyse Taylor (Dkt. 85) (the "Bailey Motion to Dismiss"); and

(3) former IDOC wardens Briley and Dominguez, joined by former IDOC warden James Sledge

(Dkt. 109) (the "Briley Motion to Dismiss").

For the following reasons, the motions are granted in part and denied in part.

Specifically, to the extent detailed below, Riley-El may proceed with his Eighth Amendment

claims based on treatment provided for his kidney condition and the provision of a diet

containing soy despite his alleged soy allergy and the allegedly negative impact that a soy-containing diet has on his kidney condition. All of Riley-El's deliberate indifference claims based on the alleged general risks of a soy-based diet, in the absence of an allergy or a medical condition for which soy is contraindicated, are dismissed. All claims against Godinez, Shicker, Taylor, Randle, Sledge, and Bailey are dismissed pursuant to Fed. R Civ. P. 12(b)(6). All claims against Walker are dismissed pursuant to Fed. R. Civ. P. 41(b). The remaining defendants shall answer the complaint by August 17, 2015. The court sua sponte names Pontiac Correctional Center Warden Randy Pfister as a defendant for the purposes of Riley-El's claim for injunctive relief, and the U.S. Marshal is appointed to serve Pfister. The court recruits counsel to represent Riley-El in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37. A separate order recruiting counsel will follow.

## I. BACKGROUND

Given Riley-El's pro se status, the court will construe his filings liberally. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014). The following facts are taken from Riley-El's complaint and will be accepted as true for the purposes of this motion. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013).

Riley-El challenges the soy-rich diet he allegedly receives as an inmate in IDOC custody. He contends that he is given an average of eight servings of soy each week and that unless he can purchase food from the commissary, his soy consumption exceeds 25 grams per day. Compl. pp. 27, 29. He alleges that a high-soy diet is generally unhealthful and can lead to thyroid disease, digestive ailments, and "immune system breakdown" that can cause an increased incidence of colds and flu, cancer, and other chronic conditions. *Id*. p. 24.

In 2011, Riley-El was diagnosed with polycystic kidney disease ("PKD"). According to Riley-El, PKD is an inherited disorder in which clusters of cysts develop in the kidneys, with high-blood pressure as a common complication. Riley-El blames his PKD on his consumption of soy. First, he asserts that PKD is hereditary but no one in his family has PKD. He thus reasons that consuming soy must have caused his PKD. Second, he represents that he is allergic to soy.[1] According to Riley-El, his soy allergy, combined with his ingestion of prescribed pain relievers, caused him to develop PKD.

In addition, Riley-El challenges the care provided for his PKD. He alleges that he filed numerous grievances over the years alleging that he was denied medical treatment for various health problems. *Id*. p. 8. In July 2013, a doctor at UIC Medical Center told Riley-El that his kidneys were functioning at 15 percent. *Id*. p. 10-11. Riley-El has had high blood pressure for years, along with other symptoms of kidney disease, including rising creatinine levels (which can indicate kidney damage), lower back pain, knee pain, headaches, nose bleeds, severe stomach pain, irritable bowel syndrome, constipation and/or diarrhea, acne, and severe headaches. *Id.* pp. 9-11, p. 27 at ¶ 44. Despite these complaints, he contends that he was not sent for an in-person appointment with a specialist, although he also alleges that he saw "a doctor over a television screen" in addition to the medical care he received at Stateville and alleges elsewhere in his complaint that he saw a kidney specialist at UIC Medical Center in 2013. *Id.* pp. 10-11.

---

[1] Riley-El's complaint does not specify whether he was diagnosed with a soy allergy after testing or whether he believes that he is allergic to soy based on symptoms that he has experienced.

Dr. Obaisi, the medical director at Stateville Correctional Center, prescribed Riley-El a "renal diet" consisting of soy-based meat despite Riley-El's soy allergy. Riley-El asked Dr. Obaisi to prescribe a soy-free diet, but Dr. Obaisi told him that this is not an option at IDOC facilities. *Id.* p. 11-12.

Riley-El also challenges care that Wexford and its employees (the "Medical Defendants") provided.[2] He alleges generally that all of the Medical Defendants knew that he had filed grievances about his high-soy diet (*id*. p. 33 at ¶ 80) and knew about his symptoms but failed to provide appropriate medical treatment (*id*. p. 34 at ¶¶ 81, 82). Next, despite Riley-El's allegation that Dr. Obaisi told him that IDOC does not allow inmates to receive a soy-free diet, he alleges that the Medical Defendants knew about the risks associated with a high-soy diet and had the ability to prescribe an alternative diet, but failed to do so (*id*. ¶¶ 83-85). In addition, he contends that Wexford's purported official policy of allowing its physicians to prescribe alternative diets for prisoners is inconsistent with its actual practice of refusing to allow its physicians to do so. *Id.* ¶ 87.

Riley-El further contends that the Medical Defendants deliberately provided ineffective medical treatment. He asserts that he should have been diagnosed with PKD earlier and that his continued consumption of soy caused his health to be in a "deteriorated state." (*Id*. p. 37 at ¶ 94.) He also alleges that his soy-rich diet is responsible for his current kidney function of 15

---

[2] The Medical Defendants are Wexford Health Sources, Inc., Arthur Funk (identified as Wexford's regional administrator), Dr. Parthasarathi Ghosh (Stateville Correctional Center's former medical director), and Wexford doctors Lawrence Ngu, Andrew Tilden; Evaristo Aguinaldo, Liping Zhang, Richard Shute, Catalino Bautista, S. Mahone, Ronald Schaefer, Imhotep "Kevin" Carter, Saleh Obaisi, D. Davis, S. Baker, and Angela Richardson. The Medical Defendants who have been served filed a motion for a more definite statement. The court has denied that motion in a separate order issued contemporaneously with this opinion.

percent.  *Id.* p. 36 at ¶¶ 92-93.  He further contends that he has not been provided with proper treatment since his diagnosis with PKD.  *Id.* ¶ 95.

After screening Riley-El's complaint, the court allowed him to proceed with Eighth Amendment claims of deliberate indifference to his serious medical needs and the alleged failure to provide a nutritionally adequate diet.  Additional facts will be discussed as necessary below.

## II.  LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555-56.  For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth.  *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

## III.  DISCUSSION

### A.   Riley-El's Claim That a Soy-Based Diet Violates the Eighth Amendment Even in the Absence of an Allergy or Medical Condition for Which Soy Is Contraindicated

Riley-El contends that even setting aside his alleged allergy to soy and his assertion that his medical condition contraindicates the consumption of soy, the soy-rich diet given to IDOC inmates violates the Eighth Amendment because it is generally unhealthy.  All three groups of defendants who filed motions to dismiss argue that Riley-El's allegations about the generalized risk of soy fail to state an actionable conditions of confinement claim.

The Eighth Amendment entitles prisoners to humane conditions of confinement that provide for their "basic human needs." *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). This includes "adequate food, clothing, shelter, and medical care." *Sain v. Wood*, 512 F.3d 886, 893 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). However, the Eight Amendment neither requires "the most intelligent, progress, humane, or efficacious prison administration," *Oliver v. Deen*, 77 F.3d 156, 161 (7th Cir. 1996), nor demands that prison officials provide inmates with "more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). To state a claim for unconstitutional conditions of confinement, Riley-El must adequately allege that: (1) he suffered a sufficiently serious deprivation of a basic human need; and (2) the defendants acted with deliberate indifference to his conditions of confinement. *Sain*, 512 F.3d at 893-94.

The defendants argue that Riley-El cannot establish a sufficiently serious deprivation based on a soy-rich diet because a number of courts have rejected inmates' claims that this type of diet put them at a serious risk of harm. For example, in *Harris v. Brown*, No. 07 CV 3225, 2014 U.S. Dist. LEXIS 137870, at *12-13 (C.D. Ill. Sept. 30, 2014) (Baker, J.), a group of prisoners claimed that excessively high amounts of soy in Illinois' prison food threatened their health. The court held that a risk violates the Eighth Amendment if it is "one that 'society considers . . . so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.'" *Id*. (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (7th Cir. 1993)). Noting the ubiquitousness of soy in the American diet, as well as the fact that the government allows food manufacturers to tout the benefits of soy on food labels, the court found that "society

today simply does not see soy protein as a risk to the general population, must less a serious

risk." *Id*. at *13-14. It then granted the defendants' motion for summary judgment, explaining

that even if it accepted the opinions of the plaintiffs' experts, the most that could be said was that

the "safety of soy is a topic of current debate and study," which is not enough to establish an

Eighth Amendment violation. *Id*. at *12; *see also Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.

1998) (per curiam) (holding that prisoner's claim that he was subjected to cruel and unusual

punishment because he became ill after consuming a soy-based meat substitute "simply does not

rise to the level of cruel and unusual punishment"); *Adams v. Talbor*, No. 13-2221-JES-JAG,

2013 U.S. Dist. LEXIS 158632, at *5-7 (C.D. Ill. Nov. 6, 2013) (Shadid, J.) (dismissing

prisoner's claim that soy-based diet caused him to experience stomach problems); *Smith v.

Rector*, No. 13-cv-837-GPM, 2013 U.S. Dist. LEXIS 140359, at *10-11 (S.D. Ill. Sept. 30, 2013)

(Murphy, J.) (dismissing claim based on "vague allegations" that prison meals contained too

much soy); *Hong v. McNeil*, No. 4:10cv155-SPM/WCS, 2012 U.S. Dist. LEXIS 19325, at

*15-16 (N.D. Fla. Jan. 6, 2012) (Sherill, J.) (recommending the grant of summary judgment to

prison officials, as the record contained no evidence that soy products caused harm, much less

that prison officials were indifferent to any risk of harm); *Mitchell v. New York State Dep't of

Corr. Servs.*, No. 6:06-CV-6278 (MAT), 2012 U.S. Dist. LEXIS 176209, at *35-36 (W.D.N.Y.

Dec. 12, 2012) (Telesca, J.) (dismissing as frivolous prisoner's claim that a soy-based diet causes

cancer).

       To state a claim for an Eighth Amendment violation, the challenged condition must

amount to an "extreme deprivation," *Hudson v. McMillan*, 503 U.S. 1, 9 (1992), and "pose[] an

unreasonable risk of serious damage to [the inmate's] future health," *Helling*, 509 U.S. at 35.

The plaintiff must also show that society has chosen not to tolerate the risk at issue. *Helling*, 509 U.S. at 36. Finally, the plaintiff must demonstrate that the defendants acted with a "sufficiently culpable state of mind" in exposing him to the risk. *Hudson*, 503 U.S. at 8.

Riley-El's allegations about the purported general unhealthfulness of soy appear to track the allegations in *Harris*, 2014 U.S. Dist. LEXIS 137870. Indeed, Riley-El has included articles relating to that lawsuit as exhibits to his complaint. However, as the cases collected above demonstrate, the alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation. Therefore, Riley-El's claim that the provision of a soy-based diet is a condition of confinement that poses a substantial risk of serious harm is dismissed.

Alternatively, the court finds that defendants would be entitled to qualified immunity as to any claim based on the alleged general health risks of consuming soy. Qualified immunity shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts use a two-part test to determine whether a defendant is entitled to qualified immunity: "(1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the [defendants] violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." *Id*. at 743 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A court has discretion to consider either element of the test first. *Pearson*, 555 U.S. at 236.

Qualified immunity can be the basis of a Rule 12(b)(6) dismissal when the allegations of the complaint, taken as true, fail to allege the violation of a clearly established constitutional

right. *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1012 (N.D. Ill. 2012); *see Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015). The plaintiff has the burden of establishing that the constitutional right at issue was clearly established at the time of the events alleged in his complaint. *Doe*, 782 F.3d at 915. Although a plaintiff need not cite to a case that is directly on point, he must demonstrate either that a court has upheld the purported right in a factually similar case or that the alleged misconduct constituted an obvious violation of a constitutional right. *Id.* (citing *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005)).

The court has reviewed numerous cases brought by prisoners who challenged the soy content of the diets they received while in custody. It has not found cases concluding that soy-based diets pose a serious risk to the health of prisoners absent an allergy or another condition for which soy is contraindicated. Similarly, it has not found cases holding that soy is either generally nutritionally inadequate or is harmful when ingested over a threshold amount. Nor has Riley-El cited any such cases. Given the absence of precedent finding that it is unconstitutional to provide inmates with a soy-based diet if soy is not medically contraindicated, no defendant would be on notice that providing such a diet violates an inmate's rights. *See Munson v. Gaetz*, 957 F. Supp. 2d 951, 954 (S.D. Ill. 2013). For this second reason, Riley-El cannot proceed with his claim that the defendants were deliberately indifferent to the alleged generalized risks of a soy-based diet.

**B.    Riley-El's Claim That a Soy-Based Diet Violates the Eighth Amendment Because He is Allergic and Has Medical Conditions for Which Soy Is Contraindicated**

Although the provision of a soy diet, as a general matter, does not violate the Eighth Amendment, it may still amount to cruel and unusual punishment if a plaintiff has a serious medical condition for which soy is contraindicated. *See Harris*, 2014 U.S. Dist. LEXIS 137870,

at \*16; *see also Munson v. Shearing*, No. 15-cv-00062-MJR, 2015 U.S. Dist. LEXIS 9123, at

\*2-8 (S.D. Ill. Jan. 27, 2015) (Reagan, J.) (allowing prisoner to proceed with claim that prison

officials subjected him to unconstitutional conditions of confinement because they refused to test

him for a soy allergy or provide an alternative diet).

Riley-El alleges that he is allergic to soy and has experienced a facial rash, acne, elevated

blood pressure, abdominal pain, and diarrhea as a result of consuming soy. *Id*. at pp. 10-11,

Compl. Ex. 3 at pp. 52-53. In a grievance attached to his complaint, Riley-El alleges that

following his diagnosis with PKD – which appears to be a serious medical condition – an outside

physician told him to reduce his soy intake and to eat more green vegetables. Compl. Ex. 2 at

pp. 44-45. At the motion to dismiss stage, the court cannot and will not determine if

disregarding this advice violates the Eighth Amendment. But for present purposes, the court

accepts Riley-El's allegation that a doctor told him to reduce his intake of soy due to his PKD.

The court notes, however, that Riley-El's contention that his PKD was caused by a

combination of an allergic reaction to soy and the effects of prescription pain medication appears

to be speculative. The same can be said for his claim that eating soy despite his soy allergy

caused him to develop hypertension. Nevertheless, Riley-El alleges that he is consuming too

much soy in light of his current health conditions, including PKD. His abdominal pain, diarrhea,

and facial rash could plausibly be the result of a soy allergy. Riley-El alleges that he brought

these concerns to the attention of the defendant prison officials, who failed to act.

A more fully developed record may belie Riley-El's claim that his diet exacerbates his

alleged soy allergy or medical conditions in a way that creates an unreasonable risk of serious

damage to his health. However, his allegations about the effect of consuming soy in light of his

soy allergy and PKD are sufficient to survive a motion to dismiss. These claims may proceed against the defendants specified below.

## C. Allegations About the Defendants' Personal Involvement

Section 1983 liability is predicated on fault, so to be liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). "A defendant will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Ames v. Randle*, 933 F. Supp. 2d 1028, 1037-38 (N.D. Ill. 2013) (quoting *Sanville*, 266 F.3d at 740). To be held liable for the conduct of their subordinates, supervisors must "know about the [unconstitutional] conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)).

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including a nutritionally adequate diet and adequate medical care. *See*, *e.g.*, *Farmer*, 511 U.S. at 832. Riley-El alleges that his diet and medical care were inadequate. To state a valid Eighth Amendment claim, Riley-El must allege facts that, if true, would establish that: (1) he suffered an objectively serious deprivation; and (2) each defendant acted with deliberate indifference to that deprivation. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.*; *see also Farmer*, 511 U.S. at 837 (deliberate indifference has an

objective and a subjective element: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's medical need).

Generally, when a prisoner is under the care of a physician, a non-medical defendant, such as a warden, may rely on the expertise of medical personnel. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011); *see also Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (a prison warden is "entitled to relegate to the prison's medical staff the provision of good medical care"). However, "non-medical officials can 'be chargeable with deliberate indifference' where they have reason to believe (or actual knowledge) that prison doctors are mistreating (or not treating) a prisoner.'" *Arnett*, 658 F.3d at 755 (quoting *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008)).

The court will discuss Riley-El's allegations about the defendants' personal involvement by considering the three motions to dismiss in turn.

### 1. The Lemke Defendants

Lemke, Ramos, McCann, Shaw, and Battaglia are former wardens of Stateville Correctional Center, and defendant Godinez is IDOC's former director. As discussed below, Riley-El has sufficiently alleged the personal involvement of Lemke, Ramos, McCann, Shaw, and Battaglia but not Godinez.

### a. Lemke, Ramos, McCann, Shaw, and Battaglia

Riley-El has grouped his allegations against former Stateville wardens Lemke, Ramos, McCann, Shaw, and Battaglia together. He alleges that these defendants were responsible for resolving inmate grievances and that they rejected his grievances requesting an soy-free diet and

medical treatment.  According to Riley-El, each of these defendants knew that he had complained that his soy-containing diet was causing him injury, knew that the diet was potentially harmful to him given his soy allergy and medical condition, and had the authority to provide him with an alternative diet but failed to do so.  Riley-El also generally alleges that he has not received adequate and necessary treatment for his serious medical needs.  In response, Lemke, Ramos, McCann, Shaw, and Battaglia argue that Riley-El's claims against them are premised on their status as high-ranking IDOC officials, rather than personal responsibility for an alleged violation of his rights.

Although not every person who receives a complaint of an alleged constitutional violation is liable under § 1983, *see Burks*, 555 F.3d 595, Lemke, Ramos, McCann, Shaw, and Battaglia are not merely public officials.  Given their positions as warden and their alleged responsibility to oversee the grievance resolution process, it is reasonable to infer that they could be aware of Riley-El's grievances and could have investigated his complaints or intervened.  A more fully developed record may demonstrate that these defendants were not, in fact, involved in resolving Riley-El's grievances and could not have known about them.  The court also observes, as it did in relation to the Medical Defendants' motion for a more definite statement, that the sprawling nature of Riley-El's complaint, which challenges medical care he received starting in 2005, means that some of his claims may be time-barred.  However, the statute of limitations is an affirmative defense, and the court cannot determine its applicability based on the present record.

Accordingly, Riley-El has adequately alleged that Lemke, Ramos, McCann, Shaw, and Battaglia were aware, through his grievances, that he claimed that he was receiving a medically

inappropriate diet and inadequate treatment for serious medical needs, including PKD and elevated blood pressure, but failed to respond reasonably. The motion to dismiss based on these defendants' alleged lack of personal involvement is denied.

### b. Godinez

In his lengthy complaint, Riley-El does not allege that Godinez was personally involved in the denial of medical care or a soy-free diet. Riley-El's only mention of Godinez appears to be his allegation that Godinez is the "Director of an administrative agency of the State" that is responsible for administering Illinois' prisons. Compl. p. 13 at ¶ 3. Accordingly, Riley-El's claims against Godinez are dismissed.

### 2. The Bailey Defendants

The next group of defendants consists of Suzann Bailey (Stateville's dietary services administrator), Marcus Hardy (another former Stateville warden), Thomas Keen (a member of the Administrative Review Board), Louis Shicker (IDOC's medical director), and former IDOC directors Michael Randle and Gladyse Taylor.

### a. Riley-El's Response to the Bailey Motion to Dismiss

In his response to the Bailey motion to dismiss, Riley-El asserts that "some of [the Bailey] defendants reviewed [and] denied grievances relating to medical treatment submitted by Plaintiff." Pl.'s Resp., Dkt. No. 107, at 2. This assertion does not appear in Riley-El's lengthy complaint. It is improper to amend a complaint via a response to a motion to dismiss. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012). In any event, even if this assertion about actions taken by "some" of the Bailey defendants was properly before the court, it does not support the inference that Bailey, Hardy, Keen, Shicker, Randle, and Taylor

each denied grievances about Riley-El's medical care. *See Twombly*, 550 U.S. at 555-56. This is especially true given that this group of defendants includes individuals who do not appear to be involved in the grievance process, such as Bailey (Stateville's dietary services administrator) and Shicker (IDOC's medical director).

While the court will construe Riley-El's complaint liberally, it will not and cannot craft factual allegations for him. Riley-El is no stranger to prisoner civil rights cases as the court's records reflect that he has filed ten prisoner civil rights cases in this district. To the extent that Riley-El wishes to provide more detailed factual allegations directed at specific defendants, he must file a motion seeking leave to amend his complaint that contains this information. Hence, the court will not consider the assertion about "some" of the Bailey defendants made in Riley-El's response when evaluating the sufficiency of the allegations in the complaint directed at the Bailey defendants.

### b. Bailey

Riley-El describes Bailey as IDOC's dietary services administrator. Based on the IDOC website, he alleges that Bailey served on a committee that planned a master menu for IDOC that started in 2004 and that she consults with dietary and prison staff at IDOC facilities concerning inmate's diets. Compl. p. 15 at ¶ 7. Riley-El's complaint contains no indication that Bailey had any personal involvement with his request for an alternative diet or his grievances about his diet and medical care. As Riley-El's claims against Bailey appear to be based on her overall responsibility for the menu served at IDOC facilities, the claims against her are dismissed.

### c. Hardy

Hardy is a former warden at Stateville.  As with the other former wardens discussed above (Lemke, Ramos, McCann, Shaw, and Battaglia), assuming that the statute of limitations does not bar Riley-El's claim against Hardy, it is reasonable to infer that Hardy could be aware of Riley-El's grievances and could have intervened or at least investigated his complaints. Riley-El may proceed with his claims against Hardy.

### d.    Keen

Riley-El alleges that Keen is a member of the Administrative Review Board and that he was responsible for reviewing and investigating his grievances.  Compl. p. 16,  9.  Accepting these allegations as true, Keen "presumably personally reviewed and investigated the complaint prior to denying [Riley-El's] request and therefore was likely aware of the prison doctors' failure to provide [Riley-El] with adequate medical care."  *See Foster v. Ghosh*, No. 11 C 5623, 2013 U.S. Dist. LEXIS 100958, at *13-14 (N.D. Ill. July 19, 2013).  This is sufficient to allow the court to infer that Keen "was personally involved and aware of the constitutional deprivation." *Id*.  Discovery is necessary to flesh out any actions Keen may have taken with respect to Riley-El's grievance but Riley-El's claim against Keen is sufficient to survive a motion to dismiss.

### e.    Shicker

Riley-El alleges that Shicker is IDOC's medical director.  In his complaint, Riley-El references IDOC's website, which – according to Riley-El – states that Shicker is responsible for setting standards for the delivery of inmate healthcare, evaluating the preventative, public, mental health, primary, and secondary care provided to inmates in IDOC custody, and the policies and procedures governing the provision of care at IDOC facilities.  Elsewhere, Riley-El generally alleges that groups of defendants, including Shicker, knew about his soy allergy and

his complaints about his care. Even construed generously, there is no discernable basis for drawing an inference that Shicker was aware of Riley-El's soy allergy, soy-containing diet, and medical situation.

Moreover, Riley-El's only specific allegations about Shicker relate to his responsibilities as IDOC's medical director, and none of these responsibilities have any discernable connection to Riley-El's specific situation. The bald allegation that Shicker knew about Riley-El's medical status and care and was involved in denying him the treatment and soy-free diet that Riley-El sought is, therefore, speculative. *See Twombly*, 550 U.S. at 555-56. A "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank*, *N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Riley-El's allegations about Shicker fail to meet this standard so his claims against Shicker are dismissed.

### f.     Randle and Taylor

Randle and Taylor appear only in the introductory section of Riley-El's complaint where he lists the defendants and their titles. Riley-El alleges that Randle and Taylor are former directors of IDOC and describes them (and multiple other defendants) as "state agency" defendants. Compl. pp. 2 and 13 at ¶ 3. As with Shicker, Riley-El's blanket assertions later in the complaint to the effect that all of the defendants were involved in the denial of medical care and a soy-free diet are speculative. *See Twombly*, 550 U.S. at 555-56; *Swanson*, 614 F.3d at 404. The claims against Randle and Taylor are dismissed.

### 3.     The Briley Defendants

The Briley defendants consist of Briley and Dominguez (former wardens of Stateville) and Sledge, the director of Central Management Services for the State of Illinois.

### a. Briley and Dominguez

The above discussion about the other warden defendants applies equally to Briley and Dominguez. Riley-El has adequately stated a claim against these defendants.

### b. Sledge

Riley-El's allegations about Sledge are based on information from the Central Management Services website. Riley-El alleges that Sledge is employed by an entity that is responsible for procuring food products that are given to IDOC inmates. Compl. p. 13-14 at ¶ 4. Riley-El does not contend that Sledge was personally involved in the alleged deprivation of his rights. There is no discernable basis to infer that Sledge would play any role in reviewing inmate complaints or grievances so Sledge's role in the IDOC food procurement chain cannot amount to a constitutional violation. Therefore, the claims against Sledge are dismissed.

## D. Riley-El's Request for Injunctive Relief

In his complaint, Riley-El seeks an injunction requiring state officials to provide him with a soy-free diet and treatment by a renal specialist.[3] Compl. p. 38. At the time he submitted his complaint, Riley-El was housed at Stateville Correctional Center; he has since been transferred to Pontiac Correctional Center. All of the defendants contend that Riley-El's claims for injunctive relief are moot as a result of his transfer. No officials from Pontiac Correctional Center are named as defendants.

---

[3]Riley-El seeks additional injunctive relief, such as an order prohibiting IDOC from serving soy-containing food to inmates. As the court has dismissed Riley-El's claim that a diet containing soy-containing food is unconstitutional barring an allergy or a medical condition that contraindicates soy, the court will not discuss his corresponding requests for injunctive relief.

If a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred, the prisoner's claim becomes moot. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). In his response brief, Riley-El contends that he is still being served a soy-based diet despite the move to Pontiac.[4] Because the soy-based diet is not a condition particular to Stateville, Riley-El's claims are not moot.

However, since Riley-El is now housed at Pontiac, he has not named a proper defendant for his claim for injunctive relief. The court takes judicial notice that the current warden at Pontiac is Randy Pfister. Pfister is a proper defendant for Riley-El's request for injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). On its own motion, Pfister is added as a defendant. The court appoints the U.S. Marshal to effect service on Pfister.

## E. Roger Walker

Roger Walker is an IDOC director. On April 24, 2015, the court directed Riley-El to return a service form for Walker, who had not yet been served, within 28 days if he wished to proceed with his claims against this defendant and stated "[i]f no service form is returned, this Defendant will be dismissed for failure to prosecute pursuant to Fed. R. Civ. P. 41(b)." Dkt. 119. It is now three months later and Riley-El has not returned the service form. Thus, the claims against Walker are dismissed for want of prosecution. *See* Fed. R. Civ. P. 41(b).

---

[4] A motion to dismiss based on the contention that the plaintiff's claim is moot is based on Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). The court may consider matters outside the complaint when ruling on a Rule 12(b)(1) motion. *See, e.g., Seebach v. Beetling Design Corp.*, 46 F. Supp. 3d 876 (E.D. Wis. 2014). Thus, the contentions in Riley-El's response are properly before the court.

**F.     Recruitment of Counsel**

The court may, in the exercise of its discretion, recruit counsel to represent indigent litigants. *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 657 (7th Cir. 2014) (citing 28 U.S.C. § 1915(e)(1)). Certain key facts, such as the last dates of employment of defendants who no longer work at Stateville, the basis for Riley-El's belief that he is allergic to soy, and the nature of any treatment provided for Riley-El's kidney condition, would be better developed with the assistance of counsel; a prompt inquiry into these issues will likely streamline this case. Moreover, the court's concerns about Riley-El's claim that a diet containing soy was unconstitutional, even in the absence of an allergy or other contraindication, was a basis for the court's previous denial of Riley-El's motion for attorney assistance. That claim is no longer pending.[5]

Accordingly, the court sua sponte recruits counsel to represent Riley-El in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37. A separate order recruiting counsel will follow. By October 9, 2015, counsel shall either file an amended complaint or advise the court that he/she cannot do so. If counsel believes that filing an amended complaint would be inconsistent with his/her Rule 11 obligations, any motion to withdraw must provide a detailed list of investigatory steps taken by counsel.

---

[5] The court previously questioned whether counsel should be recruited in light of Riley-El's claim that consuming soy and ingesting prescribed pain relievers caused him to develop PKD. This claim is based on Riley-El's assertions that PKD is hereditary and that none of his relatives have PKD; this led Riley-El to conclude that soy must be responsible. Counsel should investigate and determine if this claim is potentially meritorious.

## IV.  CONCLUSION

The defendants' motions to dismiss [25], [85], and [109] are granted in part and denied in part.  Riley-El's claims that the defendants were deliberately indifferent to the generalized risks of a soy-based diet, in the absence of an allergy or medical condition for which soy is contraindicated, are dismissed.  All claims against Godinez, Shicker, Taylor, Randle, Sledge, and Bailey are dismissed pursuant to Fed. R Civ. P. 12(b)(6).  The claims against Walker are dismissed pursuant to Fed. R. Civ. P. 41(b).  The remaining defendants shall answer the complaint by August 17. 2015.  The court sua sponte names Pontiac Correctional Center Warden Randy Pfister as a defendant for the purposes of Riley-El's claim for injunctive relief.  The U.S. Marshal is appointed to serve Pfister.  The Clerk is directed to issue summonses for service on Pfister and to send Riley-El a blank USM-285 form along with a copy of this order.  The court advises Riley-El that a completed USM-285 form is required to serve Pfister.  The U.S. Marshal will not attempt to serve Pfister unless and until the required form is received.   The court recruits counsel to represent Riley-El  in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37.  A separate order recruiting counsel will follow.  By October 9, 2015, counsel shall either file an amended complaint or advise the court that he/she cannot do so and file a motion as detailed in this opinion.  A status hearing is set for October 16, 2015 at 9:30 a.m.


Date:   July 27, 2015                                    _____/s/_____
                                                              Joan B. Gottschall
                                                              United States District Judge